**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**CHRISSY COOPER,**
                                    **Plaintiff,**

         **v.**                                                          **5:15-CV-478**

**COMMISSIONER OF SOCIAL SECURITY,**

                                    **Defendant.**

_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


## DECISION & ORDER

### I. INTRODUCTION

Plaintiff Chrissy Cooper brought this action under the Social Security Act, 42 U.S.C. § 405(g), to review a final determination by the Commissioner of Social Security denying her application for benefits. Plaintiff alleges that the decision of the Administrative Law Judge denying her application for benefits is not supported by substantial evidence and is contrary to the applicable legal standards. Pursuant to Northern District of New York General Order No. 8, the Court proceeds as if both parties had accompanied their briefs with a motion for judgment on the pleadings.

### I. PROCEDURAL HISTORY

On June 28, 2012, Plaintiff filed an application for SSI benefits. The claim was denied by initial determination on September 17, 2012. Plaintiff filed a timely request for a hearing on September 28, 2012. Administrative Law Judge ("ALJ") F. Patrick Flanigan

1

presided over a hearing on October 1, 2013. The ALJ issued an unfavorable decision on December 6, 2013, which Plaintiff appealed. The Social Security Appeals Council denied her appeal on March 4, 2015. This action followed.

As indicated above, Plaintiff brings this action under § 205(g) of the Social Security Act ("Act"), as amended, 42 U.S.C. § 405(g), to review the Commissioner's final decision.

## II.  FACTS

The parties do not dispute the underlying facts of this case as set forth by Plaintiff in her memorandum of law. Accordingly, the Court assumes familiarity with these facts and will set forth only those facts material to the parties' arguments.

## III.  THE COMMISSIONER'S DECISION

The ALJ engaged in the required five-step analysis to determine whether a claimant qualifies for disability benefits. See Social Security Administrative Record ("R."), dkt. # 9-2, at 11-18. The ALJ first determined that Plaintiff had not engaged in substantial gainful activity since January 28, 2012, the application date. Id. at 13. Second, the ALJ concluded that Plaintiff suffered from the severe impairments of spondylisthesis of the lumbosacral spine and status post remote lumbosacral fusion. Id.. The ALJ concluded that Plaintiff's "back impairments significantly limit the claimant's ability to perform basic work activities." Id.. The ALJ found, however, that the medical evidence did "not demonstrate that the claimant's status post hip fusion, migraines or acid reflux" were "medically determinable impairments." Id. at 14. The ALJ considered Plaintiff's arthritis "under her spondylisthesis diagnosis." Id.

Turning to the next step in the evaluation process, the ALJ concluded that Plaintiff

2

did not have an impairment or combination of impairments that met or medically exceeded the severity of one of the impairments listed in the Social Security regulations.  Id..  While Plaintiff's impairments were "severe," the record lacked "the specific clinical signs and diagnostic findings required to meet or equal the requirements" in the Social Security regulations.  Id..  Plaintiff failed to show that "she ha[d] a disorder of the spine resulting in a compromise of a nerve root or the spinal cord, with either (1) nerve root compression, or (2) spinal arachnoiditis, or (3) lumbar spinal stenosis, resulting in pseudoclaudication."  Id..

Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to lift and carry ten pounds occasionally and less than ten pounds frequently, stand and walk for a total of two hours out of an eight-hour workday, sit for six hours in an eight-hour workday, occasionally stoop, squat, crawl, and climb stairs, but never climb ladders, ropes, or scaffolds.  Id..  Plaintiff had to be allowed the opportunity to sit or stand at will.  Id..

The ALJ summarized the medical evidence and Plaintiff's hearing testimony.  Id. at 14-16.  Plaintiff had testified that she primarily suffered from radiating back pain, which limited her ability to perform activities of daily living, leaving her fiancé to do most things around their home.  Id. at 14-15.  While the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her symptoms, Plaintiff's claims about the intensity, persistence, and limiting affects of those impairments were not entirely credible.  Id. at 15.  Plaintiff's reported back pain was consistent with the medical record, including x-rays, MRIs and her status post-back surgery.  Id..  At the same time, the severity of such pain was not entirely consistent with Plaintiff's clinical findings, treatment history, and report of daily activities since her onset date.  Id..  Plaintiff's

3

testimony that her fiancé did most of the household tasks was inconsistent with her statements to her treating physician and the consultative examiner.  Id..

Next, the ALJ found that Plaintiff had no past relevant work.  Id. at 16.  The ALJ noted that Plaintiff would have been found "not disabled" if she had been able to perform the full range of sedentary work.  Id. at 17.  Because Plaintiff had additional limitations, the ALJ consulted a vocational expert.  Id..  The vocational expert testified that Plaintiff could perform the requirements of a number of representative occupations, such as document preparer, telephone quotation clerk and order clerk.  Id..  This testimony permitted the ALJ to find that, "considering the claimant's age, education, work experience and residual functional capacity," Plaintiff could make "a successful adjustment to work that exists in significant numbers in the national economy."  Id..  A finding of "not disabled" was therefore issued.  Id..

## IV.   STANDARD OF REVIEW

The Court's review of the Commissioner's determination is limited to two inquiries.  See 42 U.S.C. § 405(g).  First, the Court determines whether the Commissioner applied the correct legal standard.  See Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998); Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990); Shane v. Chater, No. 96-CV-66, 1997 WL 426203, at *4 (N.D.N.Y July 16, 1997)(Pooler, J.)(citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)).  Second, the Court must determine whether the Commissioner's findings are supported by substantial evidence in the administrative record.  See Tejada, 167 F.3d at 773; Balsamo, 142 F.3d at 79; Cruz, 912 F.2d at 11; Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).  A Commissioner's finding will be deemed conclusive if supported by substantial

4

evidence. See 42 U.S.C. § 405(g); see also Perez, 77 F.3d at 46; Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)("It is not the function of a reviewing court to determine *de novo* whether a Plaintiff is disabled. The [Commissioner's] findings of fact, if supported by substantial evidence, are binding.")(citations omitted). In the context of Social Security cases, substantial evidence consists of "more than a mere scintilla" and is measured by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971)(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)). Where the record supports disparate findings and provides adequate support for both the Plaintiff's and the Commissioner's positions, a reviewing court must accept the ALJ's factual determinations. See Quinones v. Chater, 117 F.3d 29, 36 (2d Cir. 1997)(citing Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982)); Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990). Although the reviewing court must give deference to the Commissioner's decision, a reviewing court must bear in mind that the Act is ultimately "'a remedial statute which must be 'liberally applied;' its intent is inclusion rather than exclusion.'" Vargas v. Sullivan, 898 F.2d 293, 296 (2d Cir. 1990)(quoting Rivera v. Schweiker, 717 F.2d 719, 723 (2d Cir. 1983)).

**V.    DISCUSSION**

Plaintiff offers two grounds for challenging the ALJ's opinion. The Court will address each in turn.

### A.    Treating Physician Rule

Plaintiff first argues that the ALJ erred by failing to give controlling weight to the opinion of her treating physician, Dr. Stephen Robinson. The ALJ assigned "little weight"

to Dr. Robinson's opinion that Plaintiff could perform less than the full range of sedentary work. Plaintiff contends substantial evidence does not support this finding.

Normally, an ALJ is required to give a treating physician's opinion controlling weight when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. 404.1527(c)(2). "On the other hand, in situations where 'the treating physician issued opinions that [were] not consistent with other substantial evidence in the record, such as the opinion of other medical experts,' the treating physician's opinion 'is not afforded controlling weight." Pena ex rel. E.R. v. Astrue, 2013 WL 1210932, at *15 (E.D.N.Y. March 25, 2013) (quoting Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004)); Snell v. Apfel, 177 F.3d 128, 133 (2d Cir.1999) ("When other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given."). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." Snell, 177 F.3d at 133. "'[T]o override the opinion of the treating physician . . . the ALJ must consider, *inter alia*: (1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist.'" Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (quoting Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013)). An ALJ must "set forth her reasons for the weight she assigns to the treating physician's opinion." Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000).

The ALJ offered the following reasons for providing "little weight" to Dr. Robinson's

6

opinion:

> Although Dr. Robinson, an orthopedic surgeon, has treated the claimant, his opinion is generally inconsistent with the medical evidence of record, the opinion of the consultative examiner, as well as the claimant's reported activities of daily living (Exhibits B3E, B3F, B5F, B5F-B6F; Hearing Testimony). For example, Dr. Robinson's finding that the claimant can rarely lift and carry less than 10 pounds is inconsistent with the claimant's testimony that she can lift a gallon of milk and her March 2013 statement that she could perform housework and light exercises (Exhibit B6F, page 3). His finding that the cliamant can sit for about 2 hours out of an 8 hour workday, will need to take unscheduled breaks and will frequently be absent from work is inconsistent with the claimant's presentation during examination, her limited use of pain medication and her reported ability to perform many household tasks (Exhibtis B3E, B3F, B5F-B6F). Dr. Robinson's conclusion that the claimant can never twist, stoop, or crouch/squat is inconsistent with his treatment records, which show that the claimant could forward flex her fingertips to her knees and had normal motor exams of her lower extremities (Exhibits B3F, B6F). His statement that the claimant's attention and concentration is frequently affected by her pain is inconsistent with her presentation during exams with Dr. Robinson and the consultative examiner (Exhibits B3F, B5F-B6F). Dr. Robinson's conclusion that the claimant can stand/walk for about 2 hours, needs to be able to change positions at will, and is limited in her ability to climb is consistent with the evidence as a whole for the same reasons discussed above.

R. at 16.

Plaintiff argues that the ALJ's reasoning here was "fundamentally flawed." Plaintiff points out that ALJ used Plaintiff's testimony to discredit Dr. Robinson's findings, even though the ALJ found that testimony on Plaintiff's limitations "not entirely credible." Plaintiff also contends that the ALJ cited Plaintiff's testimony to conclude that Dr. Robinson had applied unnecessary restrictions on lifting, even though Plaintiff's testimony appeared to support those restrictions. Thirdly, Plaintiff insists that the ALJ misrepresented the record in rejecting Dr. Robinson's findings about how pain limited Plaintiff's concentration and attention. According to Plaintiff, the evidence cited by the ALJ indicates that Plaintiff had chronic pain in her back and hip, which caused Dr. Robinson to prescribe a narcotic painkiller for Plaintiff.

7

The Court finds that substantial evidence supported the weight the ALJ assigned to Dr. Robinson's findings. The evidence cited above indicates that the ALJ properly considered "(1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist." Greek, 802 F.3d at 375. Plaintiff's arguments point to small portions of the record which appear to contradict some of the ALJ's findings, but, as explained above, the ALJ cited to the larger record, particularly the Plaintiff's reports about her daily activities and ability to work around the house, to conclude that Dr. Robinson had overstated the limitations Plaintiff's condition caused. Similarly, the ALJ acknowledged that Plaintiff suffered long-term chronic pain and needed medication to treat that condition. Such pain and such treatment, however, do not establish on their own that Plaintiff suffered from an inability to concentrate or pay attention. The ALJ pointed to the evidence of record that indicated how Dr. Robinson's findings contradicted Plaintiff's own reports of her condition and the results of other examinations. These findings establish "good reasons" for the ALJ's opinions.

While Plaintiff argues that other interpretations were available, the ALJ was not required to provide a point-by-point explanation of how that opinion fit his findings. Indeed, "[w]hen . . . the evidence of record permits [the court] to glean the rationale for an ALJ's decision," the ALJ need not "have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." Mongeur v. Heckler, 722 F.3d 1033, 1040 (2d Cir. 1983). Because substantial evidence support's the wieght the ALJ assigned Dr.

8

Robinson's opinion, Plaintiff's motion will be denied in this respect.

## B. Vocational Evidence

Plaintiff next argues that the ALJ used testimony from the Vocational Expert that was inconsistent with the Social Security Administration's written policy. The ALJ was required to ask about and elicit testimony from the Vocational Expert about any conflicts between the testimony the Expert provided regarding available positions and the descriptions of those positions in the Dictionary of Occupational Titles. The Plaintiff contends that the types of job offered by the vocational expert as fitting Plaintiff's limitations were unskilled, as the ALJ required. Such jobs normally do not have the sit/stand option required by Plaintiff's RFC. The ALJ erred, Plaintiff contends, in relying on testimony from a Vocational Expert that contradicted the Social Security Regulations ("SSR").

At the fifth stage of the disability determination process, "'the burden shift[s] to the Commissioner to show there is other work that [the claimant] can perform.'" McIntyre v. Colvin, 758 F.3d 146, 150 (2d Cir. 2014) (quoting Brault v. Soc. Sec. Admin., 683 F.3d 443, 445 (2d Cir. 2012)). The ALJ must conclude "that significant numbers of jobs exist in the national economy that the claimant can perform." Id. at 151 (citing 20 C.F.R. § 404.1520(a)(4)(v), 416.920(a)(4)(v)). "The ALJ may make this determination either by applying the Medical Vocational Guidelines or by adducing testimony of a vocational expert." Id. "The vocational expert's testimony is only useful if it addresses whether the particular claimant, with his limitations and capabilities, can realistically perform a particular job." Aubeuf v. Schweiker, 649 F.2d 107, 114 (2d Cir. 1981). "The Commissioner may rely on testimony of a vocational expert in response to a hypothetical

9

regarding availability of jobs so long as the hypothetical is based on substantial evidence." Wolfe v. Commissioner of Social Sec., 272 Fed. Appx. 21, 23 (2d Cir. 2008). "[S]ubstantial record evidence" must "support the assumption upon which the vocational expert based his opinion." Dumas v. Schweiker, 712 F.2d 1545, 1554 (2d Cir. 1983).

Linda Voss, a vocational expert, testified at Plaintiff's hearing on October 1, 2013. See R. at 375-383. The ALJ proposed the following hypothetical:

> I would like you to assume a hypothetical individual of–who is up to–let's see, from age 34-35, and who has a high school education, and has no past work experience. Please assume, further, that the individual can stand or walk for about two hours total out of an eight hour work day. Could sit for a total of about six hours out of an eight hour work day, and who could lift and carry 10 pounds occasionally, and less than 10 pounds frequently. Assume further that the claimant should be allowed a position where she could sit or stand, at her option, and also assume that the individual could do occasional stooping, squatting, crawling, and climbing of stairs, but not climbing of ladders, ropes, or scaffolds. Are you able to identify any unskilled work that such an individual could perform?

R. at 376-377. Voss provided three job titles that fit that description, identifying them by their place in the Dictionary of Occupational Titles ("DOT") and explaining the numbers of positions existing in the national economy for each title. Id. at 377. On questioning from the Plaintiff's attorney, Voss admitted that such jobs would be unavailable if the Plaintiff were limited to occasional reaching in all directions. Id. at 378. Voss identified two other jobs, however, that a person with such restrictions could perform. Id. at 378-379. Voss also testified that the positions she originally cited would be unavailable to a person who had to stand for 15 minutes, sit for 15 minutes and then walk for 15 minutes every hour. Id. at 380-381. Finally, Plaintiff's counsel questioned Voss about whether a sit/stand option was listed in the DOT as part of the three jobs that the Vocational Expert originally cited. Id. at 381. Voss admitted that such an option was not present, but "based on 25

10

years as a rehabilitation counselor working with people in jobs, placing people in jobs, analyzing jobs," she found that option was available for those jobs. Id. at 382.

Plaintiff's counsel objected at the hearing to the portion of Voss' testimony that allegedly contradicted part of the social security regulations establishing that "[u]nskilled types of jobs are particularly structured so that the person cannot ordinarily sit or stand at will." Id. at 382. Counsel expressed his "view that [the regulation] would preclude competitive employment at a sit/stand option, sedentary/unskilled base." Id. In his hearing opinion, the ALJ rejected this argument, finding that the regulation's statement on the sit/stand option for unskilled work "is consistent with the need to obtain vocational assistant [sic] in this case." Id. at 17. The vocational expert, the ALJ noted, "considered the claimant's need for a sit/stand option and indicated that there are jobs that the claimant could perform despite this limitation." Id. at 17-18. The ALJ thus "accept[ed] the vocational expert's testimony in full." Id. at 18.

Plaintiff points to SSR 83-12 in arguing that the ALJ erred in finding a sit/stand option available for the positions the vocational expert cited. That regulation provides that:

> In some disability claims, the medical facts lead to an assessment of RFC which is compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for a time, but must then get up and stand or walk for awhile before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work. (Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work.)
>
> There are some jobs in the national economy–typically professional and managerial ones–in which a person can sit or stand with a degree of choice. If an individual had such a job and is capable of performing it, or is capable of transferring work skills to such jobs, he or she would not be found disabled. However, most jobs

11

> have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinary stand or sit at will. In cases of unusual limitation of ability to sit or stand, a VS should be consulted to clarify the implications for the occupational base.

SSR 83-12. Plaintiff reads this language to mandate that unskilled sedentary work cannot have a stand/sit option. Plaintiff rejects the argument that the term "ordinarily" means that most such jobs lack a stand/sit option, arguing that "the plain meaning of the term ordinarily is as is customary or typically done." As such, a vocational expert's testimony would be necessary "to explain work as it is not typically done rather than identify jobs that could accommodate such a restriction as was done here." Plaintiff's Brief, dkt. # 11, at 6. Plaintiff also contends that the mandate to use a vocational expert for "cases of unusual limitation of ability to stand or sit" does not involve cases including the need to change positions at will, and thus does not permit the interpretation provided by the vocational expert. Id. at 7.

The Court finds that substantial evidence supports the ALJ's use of the vocational expert's opinion. In terms of the social security regulations in question, the most natural reading of those rules is that they recognize that most unskilled sedentary jobs allow little flexibility when it comes to the worker's position, but that some allow more than others. If the claimant has particular limitations in her ability to sit or stand, the testimony of a vocational expert should be used to determine whether the requirements of the position in question match the claimant's RFC. Nothing in the regulation represents a categorical prohibition on sedentary unskilled work for persons who need the ability to adjust positions and sit or stand during the work day. Voss' testimony addressed the particulars of the jobs she cited. Voss explained that her experience and knowledge of the jobs in question

12

indicated that they would afford Plaintiff the opportunity to adjust her position as required by her RFC.

In any case, Courts in this Circuit have concluded that the regulations do not require that workers performing sedentary work be capable of remaining seated all day: "[t]he regulations do not mandate the presumption that all sedentary jobs in the United States require the worker to sit without moving for six hours, trapped like a seat-belted passenger in the center seat of a transcontinental flight." Halloran v. Barnhart, 362 F.3d 28, 33 (2d Cir. 2004). "[T]he requirement that [a claimant] get up and move around from time to time does not preclude [her] ability to perform sedentary work." Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2004). The Court therefore finds that substantial evidence supported the ALJ's determination at step five. The Plaintiff's motion will be denied in this respect as well.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is **DENIED**. The Commissioner's motion for judgment on the pleadings is **GRANTED**. The decision of the Commissioner is affirmed.

**IT IS SO ORDERED.**

Dated: May 18, 2016

_Thomas J. McAvoy_
Thomas J. McAvoy
Senior, U.S. District Judge

13